The fifth case this morning is Mylon Brown v. Thomas Dart. May it please the Court, I'm Alex Loftus for the appellant Mylon Brown. Cook County Jail locked away Mylon Brown and lost the key. Mr. Brown should have been released on September 12th of 2013. Instead, he was held all the way until four months later on January 14th of 2014 when the bond was finally released. Mr. Brown filed suit within two years of when the bond was released. We have a narrow little question on appeal here, which is whether a claim accrues when someone is released from being physically in the jail versus when they're released from the bond. The facts in this case are that first, Mr. Brown is sentenced in July of 2013. When he's sentenced, he's sentenced to 79 days. The judge, Judge Rhodes, states on the record he should be out by September 12th. Mr. Brown is sentenced to jail. He's in jail. Someone at the jail advises him that he's going to be there until next March. When he learns that, he files a petition for habeas corpus. Cook County Jail fails to take him to court. When did he file that? He filed the first petition for habeas corpus on September 10th of 2013. The judge said that's when they first knew all his problem. Correct. However, we'll get to that. So the issue is, so if he first knew about his problem then, then where's the proper remedy? Where does he go to get that remedy? He goes to state court. His only option is in state court. The law is clear, and this court just found two weeks ago that you need to finish the state court proceeding first. Wallace makes reference to the fact that a prisoner's proper remedy is a petition for habeas corpus. He can't get into federal court on that claim yet. The state court proceeding has to finish first. So he files a petition for habeas corpus. He doesn't get taken in. He files it again. They don't take him in. They don't take him in. Three separate occasions they don't take him to court. He sits rotting in the Cook County Jail while they fail to transport him to court. He filed a state habeas corpus. What happened with the first habeas? It eventually got heard on December 16th. It wasn't heard because the Cook County Jail failed to transport him to court on three separate occasions. When it finally gets heard on December 16th, there isn't actually a ruling. Instead, the judge sees Mr. Brown in court and says, what are you doing here? I thought you were supposed to be out on September 12th. The state's attorney argues that Mr. Brown should still be incarcerated. He should still be in prison, in jail, excuse me, until March. And they argue that he served bad time, and these are reasons why he should still be in. The judge, rather than ruling on the spot and saying you're incorrect, Mr. Brown needs to be out and releasing him completely, instead he releases him on I-bond and just punts it to a later date. So he releases him on I-bond on that date. He doesn't rule. He doesn't say that anything was incorrect. He simply is trying to maintain the status quo as best he can by releasing Mr. Brown on bond, with conditions on bond. So he releases him on bond over the objection of the assistant state's attorney from December 16th until he has to return to court on January 14th. Now the key issue is, what does it mean to be on bond? Now while on bond, he can't possess a firearm. He can't leave the state. Now there's ample case law that the state can be a prison, and there's law that possessing a firearm is a fundamental right, a right that he should have. Those rights were deprived of him, and he had to return to court. Now meanwhile, when he returned back on January 14th, there was no assurance that he wouldn't be returned back to jail. The issues were still outstanding as to whether the sentence was assessed correctly, as to whether he had served bad time. It was up in the air. There was no finality of the proceeding until January of 2014. Prior to January of 2014, he had no claim because the state court proceeding was still going. Had he gone into federal court, they'd say, go back to state court, finish, exhaust your remedies there. These remedies were not exhausted until January of 2014. Therefore, he didn't have a cause of action until January of 2014. So he's still, the key term, as defined by Wallace, is detained pursuant to legal process, and that's what Wallace uses to interpret when a statute of limitations begins and ends, and it refers to being bonded over for a magistrate. So the clear question is, is being held on a $50,000 bond being detained pursuant to legal process? And I think it's absolutely yes. There's no way to say that being held on a $50,000 I-bond, being confined to the state, not being able to hold a firearm, having to return to court is not being held pursuant to legal process. So Mr. Brown finally files his pro se complaint on December 30th of 2016, which is within two years of when he was finally released from legal process. And that was, was that a pro se filing? That's pro se, so a pro se handwritten filing. So all this time he didn't have a lawyer, apparently. All this time he did not have a lawyer. Correct. I came in long after the filing. So he files a pro se handwritten complaint by himself then, within two years of when he was released. He knew there was a two-year limit, so that's why he filed it then. And now here we are. As to the cases, Wilson's right on point, which I added to the record yesterday morning. The state court proceeding needs to be done for the claim to accrue. The state court proceeding was still going as of January 2014. And the key thing here is that between December 30th and January 17th, the criminal court could have sent him back to jail.  The heck is implicated as to whether the term of the sentence was proper. There was no determination in his favor up until that point. Instead there was simply, I think that we might have screwed up, so why don't you go home for a month. That is not a final ruling. And most importantly, the state's attorney was still pushing for him to stay in longer, and they're still arguing that. And then all this time, while he's out on bond, his rights are extremely restrained. He can't leave the state, which is a fundamental right of travel. He can't possess a gun, which is also a right. So with those rights, he is being deprived of his rights, and there's no final ruling, so no claim can accrue for false imprisonment. I'll reserve the rest of my time for rebuttal. Thank you, counsel. Thank you. Your Honor, may it please the court. This case presents the question of whether the plaintiff has provided this court with any fact, any law, or any policy that would allow this court to bridge him from December 16th of 2013 to January 17th of 2014. He has not, and therefore this court should not. The facts are that on December 16th of 2013, the interactions between the plaintiff and the defendant in this case, the sheriff, were concluded. The plaintiff provides not a single fact that has any interaction with the sheriff, the defendant in this case, post-December 16th of 2013. Instead... When did this failure to deliver him for his hearing happen? That was between September 12th of 2013 and December 16th of 2013, Your Honor. So as of December 16th of 2013, when Mr. Brown was given the I-bond, his interactions with the sheriff were concluded, and it was at that point that his claims against the sheriff accrued. That's what the district court said at most? That's the last day? That is the last day, Your Honor. And in fact, as my colleague conceded, on December 16th of 2013, it was the state criminal trial court, not the sheriff,  it was the court, not the sheriff, that triggered the I-bond conditions. It was the court, not the sheriff, that set the date out to January 17th of 2014. So based on the facts alone, the claim had accrued as of December 16th, 2013, against the sheriff. And where is the prohibition against possessing a weapon and these other matters? Is that because he's on the I-bond? That is correct, Your Honor. The I-bond statute, 725 ILS 5-110, paragraph 3, prohibits you from leaving the state without permission from the court, and paragraph 5 requires you to turn over any firearms. So with respect to... And again, that was the trial court that imposed that I-bond, not the sheriff. With respect to the law... Is that what you call a new beginning? I would call that a new beginning, Your Honor. That's correct. Any claim against the sheriff concluded as of December 16th of 2013. His claims against the sheriff accrued at that point, and he had two years from that date... He was delivered to the court at that date. That's correct, Your Honor. And he walked out of the court on that date, on the I-bond. So when you look at the plaintiff's complaint, it's a five-count complaint. Count three is a state claim for false imprisonment. That's a one-year statute of limitations. The plaintiff conceded that that claim is time-barred. Counts four and five are for unconstitutional conditions in the jail. Well, he's clearly out of the jail on December 16th of 2013. So those claims accrued at that point, and he had two years to file. He did not, and so those counts should be out. So really, the only counts for this court to really focus on are counts one and two, the over-incarceration or false imprisonment claims. And as my colleague correctly stated, the Wallace case does indeed address this issue squarely. In Wallace, the court said that the false imprisonment is defined as being held without lawful process, and that false imprisonment ends once you are held pursuant to lawful process, as my colleague correctly stated. Therefore, as of December 16th of 2013, when the state criminal trial court judge put Mr. Brown on the I-bond, he was then being held pursuant to lawful process, and the false imprisonment claims, counts one and two, accrued at that point against the sheriff. And so Wallace clearly addresses this issue. My colleague then, to try to bridge to January 17th of 2014, relies on four highly specialized exceptions to the standard approval rule, none of which are applicable here. First, he relies on the Heck rule. The Heck rule is clearly inapplicable here. It goes to when a prisoner tries to bring a Section 1983 action, and if the prisoner prevails, and prevailing would impugn or invalidate either the conviction or the sentence, the Heck rule would apply. Here, as my colleague correctly stated, the state court judge said on the record in open court to all the parties on December 16th of 2013 that everyone agrees that Mr. Brown should have been released on September 12th of 2013, and in so doing clearly invalidated any additional incarceration. So that the Heck rule, in other words, if Mr. Brown had filed on December 16th of 2013 or immediately thereafter, there would have been no Heck bar to his Section 1983 suit. My colleague then tries to rely on equitable tolling. And as this court has said, equitable tolling applies where there is an extraordinary bar to a plaintiff filing suit. And Mr. Brown has presented no such extraordinary bar to filing suit immediately after December 16th of 2013 or within two years from that date. Third, he relies on continuing violation. And as this court stated in Evans, which is cited on page 12 of our brief, this court in continuing violations looks to the contacts between the plaintiff and the defendant. In Evans, the court cut off any violation once the plaintiff and the defendant no longer had any contacts. Is that when you say the separation from the sheriff? That's correct, Your Honor. That's exactly right. And as of December 16th of 2013, it is undisputed that Mr. Brown had no further contact with the sheriff. And so there can be no continuing violation after that date. Lastly, and most recently, my colleague relies on the Wilson case. The Wilson case is inapplicable because it is a younger abstention case. In Wilson, Dr. Wilson had his license taken away by the Illinois Disciplinary and Registration Committee. He pursued his administrative remedies. He pursued state court remedies. And his Section 1983 action, which he simultaneously filed in federal court, was stayed and then ultimately dismissed pursuant to the younger abstention doctrine. And this court even recognized that had he not filed in state court that he could have moved forward with his Section 1983 action. Here, none of that is applicable to the sheriff. The plaintiff, Mr. Brown, and the sheriff had all of their business concluded with each other as of December 16th of 2013, and Mr. Brown could have sued at that point or any time within the next two years. Instead, he waited until December 30th of 2015, and his claims are time barred. Lastly, in terms of policy, in order to reverse the district court, this court would have to do three things. First, it would have to find that the I bond is somehow confinement or custody. It is not. The Albright case decided that issue 25 years ago, and the plaintiff has provided you no reason to overturn that longstanding precedent. Even if you were inclined to do that, you would then have to find that the I bond was somehow false confinement. And as my colleague conceded, it is not. He does not challenge the confinement. I see my light is on. The last thing is, if you found that the I bond is confinement, if you found that somehow it was false, then you would have to say that all of that was the sheriff's fault. And as we've discussed, it is not because the sheriff and Mr. Brown concluded their business as of December 16, 2013. Thank you. Thank you, counsel. How much time? You have three minutes. Five. Don't I? You have three minutes. I reserved five. Oh, OK. So let's start out. I'll do just the red herring here. Counsel stressed at length that the key is that when the exchange with the county ended. That doesn't matter. A cause of action for false imprisonment accrues when the prisoner is released. So when he's released from the bond is when it accrues. Let's take this to the furthest extreme. If somebody is falsely imprisoned by an officer in Illinois and then transferred to Supermax in Colorado and spends 10 years there and then is released, his clause of action accrues 10 years later when he's released, 10 years from when he had any contact with anyone in Illinois. So here, the time of when the Cook County Sheriff had any interaction with Mr. Brown is meaningless. It's completely irrelevant. How about custody being the issue? The custody issue is key. He was released from custody on January 14th when he was released from bond. Custody is not being released from bond. Well, if he can't leave the state, he can't carry a gun. You don't make that argument. Do you have cases to support that position? Look at Hernandez. So Hernandez, he's held, he's limited to his home, and he's on an ankle brace. That's confined. Confined in the state versus confined in the house? No, I mean, he's under tight surveillance. He can't leave the house, and that's why he's got that ankle brace on. Okay, that's leaving the house, but still. How can you square it with the Albright case? So Albright has facts in the record that Albright could have requested to leave the state if he wanted to, and he chose not to, and the court goes on at length that he had his own keys to his jail cell. So it can't be in false imprisonment if he had his own keys to the jail cell. Here, there's no facts in the record to support that Mr. Brown had any way to achieve release, and, in fact, there's multiple instances in the record where he tried to ask for a release that he should have had, and he wasn't. The sheriff screwed up, didn't deliver him. We finally got to court. The court said an I-bond, Illinois statute provides that for anybody on an I-bond, those requirements. How does that implicate the sheriff? It doesn't matter if it implicates the sheriff. The implication is the sheriff put him in the position, and then the question of accrual is when is he released. So it doesn't matter what the sheriff did or didn't do in relation to the timing of his release. The question is when is he released. He is released from the I-bond in January. So what you're saying is, I think you said, when he's released from the I-bond, that starts the case. Yes. Then there's this 2-year statute of limitation. Correct, because prior to that point, he needs to finish his remedies in state court. He needs to actually get a ruling that he is, in fact, supposed to be out as of September 12th or any other date. There's no ruling from any court that he was supposed to be out prior to January 2014. It's one little narrow issue as whether being held on bond counts as confinement. That's the tiny little question that we have left here. And there is very little risk of slippery slope here. There's very little risk of this coming up again. It's such a weird, unique issue where a judge doesn't quite rule, where he sends someone home to wait to rule later. I don't foresee this coming up again. For Mr. Brown, this is imperative. And this man has been warehoused in the Cook County dungeon and denied all of his constitutional rights to try to get out. And he finally seeks his remedy. And he's allegedly 13 days late. It's not just big picture. And we have a completely broken system in Cook County. It's a disaster. And this man is suffering from that. So thank you for your time. Thank you, counsel. Thanks to both counsel. The case is taken under advisement.